# Donner's Appeal.

Where there is no distinct gift of a legacy charged on real estate, but the time of payment is annexed to the gift and postponed on account of the minority of the legatee, the legacy lapses by the death of the legatee before the time of payment; but where it is postponed for the benefit of the devisee of the estate charged, the legacy is vested.

A testator devised to his son land which he charged with a sum of money in yearly payments, three of which were directed to be paid as follows, viz.: "The seventh payment to be paid to my daughter J. when she arrives at the age of 21 years; the eighth payment also to be paid unto my said daughter J. when she arrives at the age of 22 years; the ninth payment also to be paid to my said daughter J. when she arrives at the age of 23 years." J. died before the age of 18. *Held*, that this was a vested legacy.

THIS was an appeal by David Donner, executor and devisee of John Donner, deceased, from the decree of the Orphans' Court of *Lehigh* county, confirming the report of auditors upon his account.

On the 3d of June 1829, John Donner made his will, which was proved on the 22d of September 1829, and was as follows, viz.:

"And as to such worldly affairs or estate wherewith it has pleased God to bless me in this life, I give and dispose of the same in the following manner, to wit:—I give to my loving wife, Susanna, for as long as she shall continue single and unmarried, after my decease, the yearly sum of fifty-five dollars, to be paid to her by my son David Donner, and chargeable upon the messuage, tenements, and tracts or pieces of land hereinafter devised to him. And I also give to my said wife during the time aforesaid, the corner room in the lower floor on the north side of my house wherein I now live, the small kitchen, and liberty in the large kitchen to cook if she want it, cellar as much as she may want, and the two upper rooms on the second floor, and part of the garret on the north side, and one-third of the garden. And in case my said wife could not live agreeably with my son David in the large house, then I give and devise unto her either of my other

houses during the term aforesaid. I also give to my loving wife, yearly and every year during the term aforesaid, in good and seasonable time, two fat hogs weighing at least four hundred pounds together, one hundred pounds fat beef, wheat and rye as much as she may want, to be taken to the mill and the meal and bran brought to her house by my son David, fifteen bushels corn, five bushels buckwheat, as many potatoes as she may want, with liberty to take them from the heap at any time, take the apples out of the orchard above the barn and cider made therefrom by my son David, in case she may want it, fire-wood brought to her house four feet long as much as she may want. One-third of the poultry and one-third of the eggs, four sheep and two cows, to be kept and fed winter and summer by my son David. All which said articles are to be given and done by my said son David, and chargeable upon the messuage aforesaid, together with one-quarter of an acre of flax, yearly as long as she may want it; and in case my said wife could not dress the flax, then my said son David is to give her ten pounds yearly.

" I give and devise unto my son David Donner, his heirs and assigns, all them three messuages, or tenements, and two several tracts of land, the one situate in Maccungy township aforesaid, on which I now reside, bounded by land of Peter Smyer, Henry Diefenderfer, and others, containing one hundred and sixty acres, be the same more or less; and the other situate in Longswamp township, in the county of Berks, in the state aforesaid, bounded by land of Henry Romig and others, and containing about fifty-five acres, be the same more or less, charged and chargeable nevertheless, with the payment of the yearly sum of thirty-five dollars and the delivery of the articles aforesaid, &c., to my said wife. I also give to my said son David Donner, one horse-wagon and body, together with all the horse-harness and all other farming utensils now in my possession. My said son David may take possession of the said messuages and tenements, and tracts or pieces of land aforesaid, on the fifth day of April 1830, and chargeable, nevertheless, with the payment of five thousand dollars lawful money of the United States, in yearly payments of three hundred and thirty-three dollars and thirty-three cents; the first payment to be paid to my daughter Lydia when she arrives at the age of twenty-one years; and the second payment to be paid to my said daughter Lydia when she arrives at the age of twenty-two years; and the third payment also to be paid to my said daughter Lydia when she arrives at the age of twenty-three years. The fourth payment to be paid to my daughter Judith when she arrives at the age of twenty-one years; the fifth payment also to be paid to my said daughter Judith when she arrives at the age of twenty-two years; the sixth payment also to be paid to my daughter Judith when she arrives at the age of twenty-three years. *The seventh payment to be paid to my daughter Juliana when she arrives at the*

*age of twenty-one years;* the eighth payment also to be paid unto my said daughter Julianna when she arrives at the age of twenty-two years; the ninth payment also to be paid to my said daughter Julianna when she arrives at the age of twenty-three years. The tenth payment to be paid to my daughter Mary when she arrives at the age of twenty-one years; the eleventh payment also to be paid to my said daughter Mary when she arrives at the age of twenty-two years; the twelfth payment also to be paid to my said daughter Mary when she arrives at the age of twenty-three years. The thirteenth payment to be paid to my daughter Susanna when she arrives at the age of twenty-one years; the fourteenth payment also to be paid to my said daughter Susanna when she arrives at the age of twenty-two years; and the fifteenth and last payment also to be paid to my said daughter Susanna when she arrives at the age of twenty-three years.

" And I give and bequeath unto my said son David one desk, one bed and bedding, and stove and pipe, paying to my said daughter Judith when she arrives at the age of eighteen years the sum of ten dollars for said stove. I give to my daughters, Judith, Julianna, Mary, and Susanna, one hundred dollars each, to be paid to them by my executors hereinafter named, when each of them shall arrive at the age of eighteen years respectively. I give and bequeath unto my said daughters, Judith, Julianna, Mary, and Susanna, each one cow, when each of them arrives at the age of eighteen years, to be given to them by my said son David, and chargeable upon the said messuage aforesaid.

" And I give to my beloved wife, Susanna, $100. And as to all the rest and residue of my estate, real or personal, and effects whatsoever, which shall remain after the payment of the aforesaid legacies, my debts and funeral expenses, I give and bequeath the same unto my said wife Susanna. One bed and bedstead to be given to each of my four daughters aforesaid by my said wife, when they arrive at the age of eighteen years. All which estate I give to my said wife as long as she shall live, and from and after her decease, I order that the same shall be sold, and the proceeds thereof to be equally divided to and amongst all my children.

" And I give the custody, tuition, and guardianship of my said daughters, Judith, Julianna, Mary, and Susanna, to my wife Susanna during the period of my said four daughters' minority. And I hereby nominate and appoint my said son David Donner and Daniel Mohr to be the executors of this my last will and testament, hereby revoking all former wills by me made."

On the 30th July 1832, the executors filed their account. On the 6th February 1837, Julianna, one of the legatees, died, aged 17 years, 6 months and 22 days, leaving a husband and one child. On the 7th September 1838, the Orphans' Court appointed an auditor to ascertain the amount of legacies due to each of the

legatees, when they were due, and what abatement should be made among the legatees. The auditor reported that Julianna, one of the daughters and legatees of the testator, was to receive at the age of 18 years, $100; at the age of 21 years, $333.33; at 22 years, $333.33; at 23 years, $333.33—in all $1000—from which was to be deducted $224.19 for abatements—reducing the first payment of $100 to $79.61, and the three remaining payments of $333.33 each, to $265.39 each. The Orphans' Court confirmed the report, and the appellant paid into court $79.61, which the court allowed the administrator of Julianna to take out. In July 1840, a *fieri facias* was awarded against the executors of John Donner for the sum of $265.39, with interest from the 14th July 1840; on which the money was collected and paid into court, and decreed to the administrator on his giving bond to refund in case this court decided against his right.

The appellant excepted to the confirmation of the report, the awarding of the *fieri facias*, and the decree of $265.39 to the administrator.

*Hoffman*, for appellant, contended that the legacy to Julianna Donner was contingent, and lapsed by her death before the age of 21. It falls within the settled principle that where the time is annexed to the gift, and not merely to the payment, the legacy is contingent, and more especially where the legacy is charged on real estate. 9 *Watts* 403; 7 *Paige's Ch. Rep.* 421; 2 *Edw. Ch. Rep.* 163; 1 *Vern.* 204; 2 *Yeates* 369; 12 *Serg. & Rawle* 112; 17 *Serg. & Rawle* 118; 4 *Rawle* 440. Here there is a devise over of the residue to the wife, and the postponement of the legacy was made on account of the minority of the children at the testator's decease. 9 *Watts* 443.

*Gibons, contra.* Where the devise of the land on which the legacy is charged becomes vested, the legacy is considered vested, particularly if the legacy is postponed for the convenience of the devisee, or on account of the circumstances of the estate. The character of the legacy depends on the intention of the testator, apparent from the whole structure of the will. 2 *Yeates* 363. This will was penned with reference to the situation of the testator's estate. These yearly payments postponed the entire payment for 15 years, which was done for the accommodation of his son, to whom he devised the real estate, and not merely on account of the minority of his daughters. 5 *Rawle* 99; 4 *Rawle* 451; 4 *Watts* 143.

The opinion of the Court was delivered by

HUSTON, J.—There is no doubt of the general rule, that if a legacy is given, and afterwards said it shall be paid at 21 or marriage; but if there is no distinct gift of the legacy, but the time

of payment is annexed to the gift, as " I give $      at 21 or marriage," and legatee dies before 21 or marriage, it is gone.

It is also a rule, as general, that the intention of the testator is to be carried into effect. Now, if we reflect on the infinite variety of expression indicating the same intention, we will not be surprised to find some apparent difficulty in the cases. The intention is to be collected from the whole will. It is not easy to find any substantial difference between " I give to each of my daughters $1000, payable out of my land," and " I charge my land with $1000 for each of my daughters." The intention that each daughter shall receive $1000 from the devisee of the land, is as apparent in one form of expression as in the other. Construing the will by the plain intention of the testator, the one and the other form of expression mean the same. But we are told by the appellant that this $5000, that is, $1000 to each of five daughters, is divided into yearly payments of $333.33 to the eldest when she arrives at the age of 21 years; and the same sum when she arrives at the age of 22 years; and the same sum when she arrives at the age of 23 years; and the payments to each of the other daughters are to be made at their attaining the age of 21, 22, and 23 years. And it is contended that there is another rule, viz. that although a legacy to be raised out of personal estate would vest, yet where it is to come from real estate, and the legatee dies before she arrives at that age, it is not to be raised, but merges in the real estate for the benefit of the heir at law, or the devisee of the land. I admit we find such a rule in the English authorities, and sometimes in our own books—but in both countries there are many exceptions; and some of these are reduced to classes of cases, and the exceptions are supported by as high authority as the general rule. I shall not state all these exceptions; but one of them is— If the time of payment is postponed, not on account of the minority of the legatees, but for the benefit of the estate, or of the devisee of the land, the legacy does not sink or merge in the land. Now, if each daughter was to receive her whole $1000 on attaining 21, it might be said the payment was postponed until that period, because the testator supposed her not capable of managing her portion before that age; but at 21 she gets but one-third of her legacy, and the same sum, without interest, at the period of her attaining 22, and again 23. Now, this could not have been because she was not capable of managing it while a minor. It was not so ordered for her benefit. It could only have been for the ease and benefit of the son, to whom the land charged with these legacies was devised. That in this case the times of payment were postponed for the ease and advantage of the son, is so apparent, that it cannot admit of doubt. The case, then, comes within this well established exception to the general rule. For authorities, I refer to 2 *Yeates* 368, 9; 4 *Rawle* 451; 2 *Atk.* 127; a case decided and affirmed on a bill of review, *Ibid.* 130; and the

[Donner's Appeal.]

cases cited in the notes to *Sanders's edition of Atkyns*; *Emes* v. *Hancock*, (2 *Atk.* 507); 1 *Roper on Leg.* 436; and cases there.

The judgment is affirmed, without recurring to, or asking support from the good sense of what has been said by more than one judge in this state, that the desire of keeping the estate in the oldest son, has no place in the laws or feelings of the inhabitants of this state.

Judgment affirmed.